IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

SANDRA CONLEY,

                            Plaintiff,                    Case No. 3:05 CV 7326

            -vs-
                                                         MEMORANDUM   OPINION
CITY OF FINDLAY,

                            Defendant.

KATZ, J.

        This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 40)

[hereinafter "Def.'s Br."], Plaintiff's Response (Doc. 41) [hereinafter "Pl.'s Br."], Defendant's

Reply (Doc. 43), and Plaintiff's Sur-reply (Doc. 48). This Court has jurisdiction pursuant to 28

U.S.C. § 1331. For the reasons enumerated below, the Court grants summary judgment in favor of

Defendant, and hereby dismisses the case.

**I. Factual Background**

        Plaintiff Sandra Conley ("Conley" or "Employee") was first employed at the Defendant

City of Findlay's ("Defendant" or "Employer") Water Pollution Control ("WPC") Plant in

September of 1997. Civil Service Commission Hearing Transcript, July 8, 2003, page 11, Def.'s

Ex. 1 (Doc. 23). Conley worked the third shift as an Assistant Operator at the WPC Plant until

being discharged in February of 2003. *Id.* An Assistant Operator assists in the operations of

wastewater treatments, sludge processing, and disposal equipment. Position Description, Def.'s

Ex. 6, page 1 (Doc. 28). The specific duties, according to the job description, include operation,

inspection, and cleaning of the belt filter process; monitoring liquid levels and supernant liquid

from sludge holding tanks; transferring sludge from digestors to holding tanks; reading and recording charts, meters, and gauges as needed; unskilled duties such as cleaning and maintenance; and monitoring environmental conditions. *Id.* At periodic evaluations, Conley received some "satisfactory" and "good" marks. However, at some point she began to receive enough less-than-satisfactory marks that her supervisors were prompted to conduct a special performance review. The review required detailed follow-up and concluded that Conley could perform the unskilled parts of her job satisfactorily, but also that she needed improvement on the "plant operations" aspects of her job. Performance Evaluations, Def.'s Ex. 7 (Doc. 29). Conley had other incidents on her record, including a probation period that resulted from her damaging of a WPC Plant truck and garage door in an effort to move the truck so she could wash her car during working hours. Conley Dep., 35-37, June 5, 2006 (Doc. 21).

Defendant demoted Plaintiff to Custodial Worker at the WPC Plant on February 8, 2003. On August 4, 2003, Plaintiff filed a discrimination charge with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission regarding her demotion. Defendant reinstated Plaintiff to Assistant Operator on September 11, 2003. *See* Finding of Civil Service Commission, Sept. 11, 2003, Def.'s Ex. 11; Conley Dep. at 93. In an April 23, 2003 evaluation, a supervisor reported that Conley lacked "the desire or willingness to perform [her] tasks in a dependable manner," and that she "continually insists on working in a below average manner." Roesch Evaluation, April 23, 2003, Def.'s Ex. 14 (Doc. 36). Conley was reprimanded in February 2004 for causing, or at least being involved in, an overflow of a sludge tank, which it was her job to oversee and prevent. Conley Dep. at 52-55. On March 31, 2004, Conley caused or was involved in the overflow of another tank, this time of the significant amount of 500,000 gallons of

2

sludge and waste that posed a threat to the environment and could have subjected the city to high fines from the Environmental Protection Agency ("EPA").  *Id.* at 56-61; Appendix A, Def.'s Ex. 15, pages 1-2 (Doc. 37).  Conley indicated in her report of the incident that only 50,500 gallons had overflowed.  Roesch Aff., Def.'s Ex. 16, page 2 (Doc. 38); Appendix A, page 2.  On April 27, 2004, while an investigation of the March spill was underway, Conley caused a third spill, albeit a minor one.  Conley Dep. at 65; Roesch Aff. at 2; Appendix A at 2.  She was terminated effective May 20, 2004.  She appealed her termination to the Civil Service Commission, and thereafter filed this lawsuit.

**II. Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim.  *Id.* at 323-25.  Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

3

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### III. Discussion

Plaintiff accuses Defendant of employment discrimination based on gender in violation of Title VII, Ohio Rev. Code § 4112.02, and 42 U.S.C. § 1983, creating a hostile work environment in violation of federal law, and retaliation in violation of 42 U.S.C. § 1983 and Ohio Rev. Code § 4112.02.

#### A. Discrimination Based on Gender

It is unlawful under federal law for any employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). It is also unlawful under Ohio law "[f]or any employer, because of the . . . sex . . . of any person . . . to discharge without just cause . . . or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A). The Ohio Supreme Court has held that evidence sufficient to support a finding of discrimination under Title VII of the Civil Rights Act of 1964 is necessary before a violation of § 4112.02(A) can be shown. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196, 421 N.E.2d 128, 131 (1981); *see also Little Forest Medical Ctr. of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St. 3d 607, 609-10, 575 N.E.2d 1164, 1167 (1991), *cert. denied*, 503 U.S. 906 112 S. Ct. 1263, 117 L. Ed. 2d 491 (1992); *El Grande Steak House v. Ohio Civil Rights Comm'n*, 99 Ohio App. 3d 557, 562, 651 N.E.2d 440, 444 (1994); *Twinsburg City Schools v. Ohio Civil Rights Comm'n*, 86 Ohio App. 3d 527, 529, 621 N.E.2d 591, 593 (1993). Therefore, the Court will consider Plaintiff's federal and state claims together.

The employee carries the initial burden of establishing a prima facie case of job status discrimination in employment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). An employee establishes a prima facie case of discrimination by presenting evidence which, when viewed in the light most favorable to her, would permit a reasonable jury to find that she was denied advancement opportunities because of her sex. *Rose v. National Cash Register Corp.*, 703 F.2d 225, 227 (6th Cir. 1983).

She can meet this burden by presenting either direct or circumstantial evidence of discrimination. Direct evidence is found, for instance, where an employer's policy is discriminatory on its face, *see Trans World Airlines, Inc., v. Thurston*, 469 U.S. 111, 121 (1985), or where a corporate decision-maker expressly states a desire to remove employees in the protected group, *see LaPointe v. United Autoworkers Local* 600, 8 F.3d 376, 379-80 (6th Cir. 1993). In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even had it not been motivated by impermissible discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989) (plurality opinion); *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994).

Where no direct evidence of discrimination exists, an employee can establish her prima facie case by indirect or circumstantial evidence. In that instance, she must show (1) that she is a member of the protected class; (2) that she was denied opportunities or experienced an adverse employment decision; (3) that she was otherwise qualified; and (4) that other individuals outside the protected class received more favorable treatment. *See Siegel v. Alpha Wire Corp.*, 894 F.2d

6

50, 53 (6th Cir. 1990); *Gagné v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 313 (6th Cir. 1989). Where the plaintiff presents only circumstantial evidence of discrimination, the burden of production then "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for the less favorable treatment.  *See McDonnell Douglas*, 411 U.S. at 802.  Once the employer has met its burden, the burden shifts back to the employee to show that the employer's stated reason for the less favorable treatment is pretextual.  *Id.* at 804.  In circumstantial evidence cases, the burden of persuasion remains at all times with the employee.  *Gagné*, 881 F.2d at 315-16.

Defendant concedes that Plaintiff has established a prima facie case of discrimination. Def.'s Br. at 7-8.  The burden thus shifts to the Defendant to prove that its discharge of Plaintiff was based on "some legitimate, nondiscriminatory reason."  *McDonnell Douglas*, supra at 802. Defendant states that Plaintiff was fired for her role in the March 31, 2004 overflow of approximately 500,000 gallons of waste and sludge at the water plant that threatened ecological damage to the city's surroundings and high EPA fines, and for her role in falsifying records in an attempt to cover up the spill.  Def.'s Br. at 8.  Plaintiff's Brief disputes Conley's role in the massive spill, Pl.'s Br. at 11-12, but in her deposition she concedes that it was her "oversight" and "mistake," that she did not see the warning signs of an overflow, and that it was her job to notice an overflow and stop it.  Conley Dep. at 56-61.  If the Plaintiff did not cause the admittedly "significant" overflow, then her non-performance of her duties (her "oversight" and "mistake") was at least a culpable and significant contribution to its occurrence, according to her own deposition.  *Id.*  Plaintiff was also involved in two other spills that involved less significant amounts of supernant.  Appendix A, supra at 2.  Defendant fired Plaintiff also because, allegedly, Plaintiff wrote down that only 50,500 gallons had spilled when in fact 500,000 gallons had spilled.

7

*Id.*  Plaintiff disputes her role in the falsification of those records, but at the very least admits that she recorded the inaccurate information.  When the other employee involved in the falsification came forward to admit his role, he received a lesser sanction than Plaintiff.  Roesch Aff., supra. Taken together, Plaintiff's role in the large overflow, the two smaller overflows, and the false records, constitute a legitimate and nondiscriminatory reason for her termination.

The burden then shifts to the Plaintiff to show that Defendant's actions were mere pretext for discrimination.  A plaintiff may establish pretext by showing either "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate her discharge, or (3) that they were insufficient to motivate discharge."  *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Plaintiff argues that the disputed role she played in the overflows discussed above creates an issue of fact that should prohibit summary judgment.  Plaintiff further alleges that she was treated disparately as compared to male employees who were involved in the overflows.  As evidence, Plaintiff's brief offers accusations that she was given a different uniform than the men when she began working, that co-workers made "unwarranted complaints" and "false accusations" about her, and that men were given lighter sanctions for their roles in overflows.   Pl.'s Br. at 11-13.  Plaintiff's most significant complaint is that her role in the major overflow is disputed, thereby creating an issue of material fact.  However, in her own words in her deposition she admits to having mistakenly allowed the overflow to occur.  Conley Dep. at 56-63.  The Defendant cited this incident, in addition to other incidents of "Incompetence [pattern of conduct] . . . Nonfeasance . . . Negligence . . . [and] Dishonesty . . ." as a reason for Plaintiff's dismissal. Appendix A, supra at 3.  In any case, these alleged facts do not go so far as to show that

8

Defendant's reasons lacked factual basis, did not motivate her discharge, or were insufficient to motivate her discharge. To the contrary, the record shows that the proffered reasons, Plaintiff's role in the March spill and the record falsification, have a basis in fact, actually motivated the dismissal, and were sufficient to motivate her discharge. Plaintiff has not shown that these reasons are pretextual, and so cannot avoid summary judgment on her discrimination claim.

### B. Hostile Work Environment

To prove a claim of hostile work environment harassment, a plaintiff-employee must show that:

> 1) the employee was a member of a protected class; 2) the employee was subjected to unwelcomed sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; 3) the harassment complained of was based upon sex; 4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment that affected seriously the [psychological] well-being of the plaintiff; and 5) the existence of respondeat superior liability.

*Kauffman*, supra at 183 (citations omitted).

In order to find a hostile work environment, "both an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive[,] and the victim must subjectively regard that environment as abusive." *Bowman,* 220 F.3d at 463. The Sixth Circuit has explained the factors to be considered in determining whether a plaintiff has established the existence of a hostile work environment as part of her prima facie case:

> The court must consider the totality of the circumstances when determining whether, objectively, the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. "The issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile work environment case, but whether – taken together – the reported incidents make

9

out such a case." . . . Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Id.*

Plaintiff concedes that there was no "overtly sexual behavior directed at her."  Pl.'s Br. at 16.  Rather, she relies on many of the same alleged actions taken by the employer and other employees that are also claimed to have constituted sexual discrimination: having a different uniform until she asked for a new one, having more cleaning duties than male employees, working with one employee who "refused to talk to her[] and made false reports about her," having received harsher treatment for her role in the March spill than others did for theirs, and being treated "condescendingly" by a supervisor who asked Plaintiff to demonstrate certain tasks.  *Id.*

Considering the totality of the circumstances surrounding Plaintiff's employment and the alleged actions taken by Defendant's employees, the allegations do not rise to the level of a hostile work environment.  There are legitimate non-discriminatory reasons for several of these complaints, and there is no evidence that any of these actions were taken because of Plaintiff's gender or with discriminatory animus.  They were not severe and were not overly humiliating, especially in light of some of them being warranted, from the employer's point of view, by Plaintiff's under-performance of her duties.  They did not physically threaten her or sexually harass her.  Some of Plaintiff's complaints constitute personality conflicts with certain employees who "refused to talk to her" or "made false reports about her," but not a hostile work environment or discriminatory animus based on sex.  That she was assigned more cleaning tasks and felt condescended upon when her supervisor asked her to demonstrate tasks are likewise not

10

actionable, in particular where, as here, a supervisor had evaluated the employee and reported that she performed her operational duties poorly but her cleaning duties satisfactorily. After all, three overflows occurred on her watch, including the significantly large March spill. Plaintiff's workplace complaints, in light of the employer's fact-based evaluation of Plaintiff's job performance, without more, do not rise to the level of creating an actionable hostile work environment.

### C. Retaliation

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). A plaintiff establishes a prima facie case of retaliation by showing:

> (1) that he engaged in an activity protected by Title VII;
> (2) that the defendant knew of the plaintiff's exercise of his civil rights;
> (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and
> (4) that there was a causal connection between the protected activity and the adverse employment action.

*Harrison v. Metro. Gov't of Nashville & Davidson County, Tenn.*, 80 F.3d 1107, 1118 (6th Cir. 1996); *Christopher v. Stouder Memorial Hosp*., 936 F.2d 870, 877 (6th Cir. 1991); *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987). Once the plaintiff establishes a prima facie case of retaliation, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Canitia v. Yellow Freight Sys., Inc*., 903 F.2d 1064, 1066 (6th Cir. 1990). The burden then shifts back to the plaintiff to demonstrate that the proffered reason is a pretext. *Id*.

11

Plaintiff sets forth a prima facie case, raising the question whether a legitimate, non-discriminatory, and non-pretextual reason exists for Plaintiff's discharge.  Plaintiff argues that "[a] jury could easily find that a discriminatory reason . . . motivated the employer . . ., especially given the fact that other persons equally or more culpable either were not disciplined" or received lighter sanctions than she did.  Pl.'s Br. at 18-19.  Plaintiff, however, does not establish a link between her report to the Civil Service Commission and her alleged mistreatment by the employer.  Plaintiff admits that the other less-punished employees played different roles in the overflow and the falsification of records than she did.  An employer may discipline one party who it views more culpable with harsher sanctions than an employee it views as less culpable.  In such instances a legitimate reason exists, and the factual issues proposed by Plaintiff do not create any suspicion that the action was discriminatory rather than based on the various roles parties played in the misconduct.  For example, the shift operator who was on duty before Plaintiff on the day of the March overflow began the waste process earlier than usual.  Plaintiff, however, was the person who overlooked the process completely until a significant overflow had taken place.  The operator who helped Plaintiff estimate numbers that were inaccurate on the accident report testified that he returned later to his superiors and admitted his role, offered an explanation (that Plaintiff had pressured him into doing it), and corrected it.  Roesch Aff., supra.  That this employee would receive a lighter sanction than would Plaintiff, who the  employer determined played a manipulative role in falsifying the report, appears justified.  In both instances, offenders at different levels of culpability received different levels of sanctions.[1]  There is no evidence on the

---

[1]

Plaintiff does not argue that the other employees were "similarly situated" to Plaintiff for purposes of a discrimination claim.

record  that the lesser offenders received lesser sanctions because they were men, rather than because the employer consider them to have played a smaller role in the violations.  Further, there is no evidence to suggest that this action was pretextual.  A reasonable jury could not find a discriminatory or pretextual motivation on the facts on record viewed in the light most favorable to the nonmoving party, and therefore Plaintiff cannot survive summary judgment on her retaliation claim.

**IV. Conclusion**

For the reasons enumerated herein, the Court grants Defendant's motion for summary judgment (Doc. 40) and hereby dismisses the case.

IT IS SO ORDERED.

    s/ *David A. Katz*    
DAVID A. KATZ
U. S. DISTRICT JUDGE